William **ALEXANDER**, and **John Hall**
and **Carolyn Hall**, Plaintiffs,

v.

**CERTIFIED MASTER BUILDER
CORPORATION**, Defendant.

No. Civ.A. 96–2515–GTV.

United States District Court,
D. Kansas.

July 16, 1999.

Patricia L. Lear–Johnson, S.W. Longan, III, Longan & Associates, Leawood, KS, for William Alexander, plaintiff.

Robert A. Babcock, Kara Trouslot Stubbs, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for John Hall, Carolyn Hall, plaintiffs.

Craig T. Kenworthy, Don R. Lolli, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, Robert R. Bartunek, Swanson Midgley et al, Kansas City, MO, for Certified Master Builders Corporation, defendant.

## MEMORANDUM AND ORDER

VanBEBBER, District Judge.

Pursuant to K.S.A. 60–3201, this court, upon the parties' motions (Docs.190, 192, 195), hereby certifies to the Kansas Supreme Court the following questions of Kansas law, which are deemed to be determinative in this action and which no controlling precedent exists in the Kansas Supreme Court or the Kansas Court of Appeals:

(1) Whether the one-year limitations period under K.S.A. 60–514(c) applies to a claim for civil penalties under the Kansas Consumer Protection Act (KCPA), 50–623 *et seq.*, in a case in which the plaintiff asserts both a civil penalties claim and an actual damages claim under the KCPA?

(2) Whether, under the facts of this case, defendant Certified Master Builder is a "supplier" under K.S.A. 50–624(i)?

Neither the Kansas Supreme Court nor the Kansas Court of Appeals has determined whether the one-year limitations period of K.S.A. 60–514(c) applies to a claim for civil penalties in a case where the plaintiff asserts both claims for civil penalties and for actual damages under the KCPA. Nor has either court construed the term "supplier" in section 50–624(i) on facts even remotely similar to the instant action. Accordingly, this court finds that the certification of these questions to the Kansas Supreme Court is proper pursuant to K.S.A. 60–3201.[1] *See Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir.1990) (certification is discretionary).

Plaintiffs also requested certification of questions regarding the proper limitations period for a claim for damages under the KCPA, and whether defendant's alleged conduct constitutes a separate violation each day. The court finds that these questions are inappropriate for certification. Defendant requested certification of questions regarding interpretation in this case of the terms "consumer transaction" and "service" under the KCPA. Those terms are used in the definition of "supplier" under the KCPA and, therefore, subsumed in the certified question of whether defendant is a "supplier" under the KCPA. Accordingly, the court declines to certify these questions.

### Factual Background

The court provides the following factual background based on evidence submitted with the summary judgment motions

---

1. The court vacates its Memorandum and Order (Doc. 33) filed November 12, 1997, which addressed whether defendant was a "supplier" under the KCPA, and withdraws Sections III.A. and III.D. of its Memorandum and Order (Doc. 177) filed March 26, 1999, which addressed whether the one-year statute of limitations under K.S.A. 60–514(c) applies to plaintiffs' claims for civil penalties under the KCPA. Both documents are attached as Exhibits A and B, respectively. The court also vacates its Order (Doc. 184) filed April 7, 1999, which denied plaintiff's motion to alter or amend the March 26, 1999 judgment with respect to the one-year statute of limitations for civil penalties under the KCPA.

in this case. This case arises from two independent residential construction agreements—one between plaintiff William Alexander and Michael Everhart d/b/a Everhart Homes, Inc., and one between plaintiffs John and Carolyn Hall and Everhart. At the time that the agreements were entered into and during the subsequent construction of the homes, Everhart was a Certified Master Builder.

The Certified Master Builder Corporation (CMB) is an organization created to promote the home building industry. Comprehension of CMB's role in its members' endeavors is critical to resolution of this case. When CMB incorporated in 1974,[2] its articles of incorporation stated the purposes of the association, including:

(1) To participate in and to provide a program whereby consumers can be better assured that new homes they are buying are produced to an acceptable standard and are backed by a Warranty insured by a Casualty Insurer.

(2) To do all things necessary to meet and maintain the criteria of eligibility from time to time established by [CMB] for participation in such program and in furtherance of said program to apply for and receive a revocable license from [CMB] to issue a standard form Warranty to new home buying consumers.

Subsequent amendments to the articles in 1981 replaced the above language with the following:

(1) To promote a home warranty program or programs among members of the home building industry, and to encourage and to give assistance in making application for membership in any such program or programs.

(2) To act as a representative of a home warranty program or programs and to receive, answer and otherwise respond to inquiries from home builders, home owners and prospective home buyers concerning any such program.

In 1992, CMB again amended the articles to add the following purpose:

(14) To operate certified master builder and certified master remodeler programs and similar programs for other segments of the property development, home building and home remodeling industries and to take all action reasonably related thereto.

From its incorporation through April 1993, CMB's by-laws articulated the following corporate objectives:

A. To benefit the public by providing a means to recognize qualified, reliable home builders ... through [the] Certified Master Builder [Program.]

B. To provide a process of handling consumer complaints regarding home building ... as an alternative to litigation.

C. To ensure that new home buyers, as a minimum, are offered a one-year limited warranty which includes a guideline of industry standards of construction.

D. To ensure that purchasers of residential remodeling, as a minimum, are offered a reasonable warranty.

E. To operate homes tours to showcase member's homes and make it convenient for consumers to inspect and educate themselves concerning new home products.

The corporate rules and regulations applicable when plaintiffs contracted for construction of their homes were those adopted in June 16, 1992. The rules and regulations, in pertinent part, provide:

I. *MISSION STATEMENT*

The Certified Master Builder Program is intended to promote the home building industry and to encourage professionalism within that industry. It requires all Certified Master Builders to meet strict qualifications. The program will benefit the home buying public by

---

**2.** CMB originally incorporated under the name, Home Owners Warranty Registration Council of Greater Kansas City, Inc., but subsequently changed the name to Certified Master Builder Corporation.

providing a means to recognize qualified, reliable home builders.

The Certified Master Builder Program provides an economical and fair process of handling consumer complaints. The conciliation and arbitration procedure offered provides an alternative to costly and time-consuming litigation.

The Certified Master Builder Program also ensures that Certified Master Builders offer, as a minimum, a one-year limited warranty to new home buyers. The warranty provides the home buying public a guideline of industry standards of construction.

\*     \*     \*     \*     \*     \*

## IV. WARRANTY

A. All Certified Master Builders agree to issue to their customers, as a minimum, a one year limited warranty from the final inspection or occupancy of the owner, whichever occurs first.

\*     \*     \*     \*     \*     \*

## V. CONTRACT PROVISIONS

All Certified Master Builders agree to use contracts which are clear, professionally drafted, contain all legally-required provisions (specifically including provisions regarding the appropriate Conciliation and Arbitration Procedure) and fair to their customers.

\*     \*     \*     \*     \*     \*

## VII. MISCELLANEOUS

\*     \*     \*     \*     \*     \*

C. The member will have available to him professionally designed promotional materials, including but not limited to decals, brochures, site signs, warranties, "Care of Home" booklets, etc.

D. The member will be provided with an official Certified Master Builder Certificate suitable for framing and displaying in his place of business.

E. Each member agrees to present his business firm and/or himself to the public as a Certified Master Builder by using the insignia when advertising to identify himself as such and to use any promotional materials as may be made available under the Program.

The applicable rules and regulations also set forth a detailed conciliation and arbitration procedure and required CMB members to pay dues.

CMB, through its members, distributed a brochure to the general public. The brochure provides a detailed description of the benefits of contracting with a Certified Master Builder. The brochure provides that, "[w]hen you select a Certified Master Builder, you can enjoy the protection of a Conciliation and Arbitration agreement. Should you have a complaint that cannot be resolved with your builder, the [CMB's] Arbitration and Conciliation Committee will investigate to determine the builder's responsibility."

Under the Certified Master Builder seal, the brochure explains, "[t]he Builder who displays the Certified Master Builder Seal has demonstrated the highest standards of CHARACTER TRUST AND PROFESSIONALISM." In a section labeled "Earning the Certification," the brochure provides:

To become a Certified Master Builder, an applicant must:

- have experience in the home or commercial construction profession for a specified period of time
- have built a required number of homes
- have demonstrated financial and on-site responsibilities
- be a full-time professional who derives his principal income from home building and/or related real estate activities
- submit the names of previous customers as references
- have Certified Master Builder sponsors with personal knowledge of the applicant's business integrity and construction knowledge
- have an acceptable credit history

- appear before a committed of Certified Master Builders for a personal review
- agree to take part in annual continuing education
- agree to abide by the Code of Ethics of the Certified Master Builder program
- agree to binding arbitration in the event of an unresolved complaint from a customer

Once accepted as a Certified Master Builder, members are reviewed annually. The brochure also lists the address and telephone number of CMB.

CMB also advertised its program in newspapers throughout the greater Kansas City metropolitan area which includes Wyandotte and Johnson Counties in Kansas. Plaintiffs allege that CMB, through the brochure and advertising, misrepresented the benefits of contracting with a Certified Master Builder.

At its inception, CMB allowed then-current HBA members to gain CMB membership without meeting the qualifying requirements. Michael Everhart d/b/a Everhart Homes became a Certified Master Builder through this exemption. Everhart contractually agreed with CMB upon membership to follow CMB's code of ethics and to offer a one-year limited warranty meeting CMB's requirements.

CMB does not require members of the program to use a form contract. CMB does nothing to check the contract language used by CMB members, or to verify that the contracts are clear and contain the required language. Specifically, CMB did not approve Everhart's contract with Alexander or the Halls. If a CMB member did not comply with the rules and regulations, the member was subject to termination or non-renewal of membership. Members are generally reviewed for continuation of membership, with each initial review coinciding with the membership anniversary date. Everhart, however, did not receive a review for at least twenty months after becoming a member of the CMB program in July 1992.

After receiving numerous homeowner complaints, CMB investigated Everhart and refused to renew his CMB membership. CMB's October 1994 summary of its file on Everhart stated that Everhart engaged in the following: (a) misrepresentations regarding his contract being the approved CMB form; (b) cost-plus contracts resulting in excessive prices; (c) quitting work on a home if disputes arose, even if he was at fault; (d) abuse and threats toward buyers and subcontractors; (e) overbilling for work; (f) disputes with over one-half of his buyers; (g) disputes with subcontractors and suppliers.

## A. Facts Specific to Alexander's Claims

In March 1993, Alexander was considering various builders. Everhart gave Alexander the CMB brochure explaining the benefits accruing to Alexander from contracting with Everhart as a Certified Master Builder. Alexander claims that he had not seen any articles or advertisements that informed him that founding members of the CMB did not "earn the certification," or that described the grandfathering process by which builders who were HBA members in good standing were made CMB members without requiring the background information and program compliance described in the brochure.

On April 1, 1993, Alexander and Everhart entered into a residential construction agreement. Alexander read the contract, initialed each page, and signed at the end of the contract. The contract included a provision stating that the contract and home were "covered by the [CMB] Program," and expressly incorporated the conciliation and arbitration procedures of CMB's program, as "described in the limited warranty." The contract further provided for arbitration procedures in the event that the buyer does not opt for CMB's procedures. The builder's limited warranty, which was attached to the contract, covered defects in workmanship and materials and expressly applied for one year from the date of closing. The build-

er's limited warranty stated nothing about the CMB procedures. Alexander did not talk to anyone at CMB prior to signing the contract with Everhart.

As of the date that Alexander received the CMB brochure, Alexander believed, based on representations in the brochure, that Everhart had home-building experience. As of April 1, 1993, Alexander claims that he had no knowledge that Everhart demonstrated a lack of financial and on-site responsibility or that he was not a full-time professional deriving his principal income from home-building. Alexander claims that, if CMB had told him that Everhart was grandfathered into the program, Alexander would have insisted on obtaining references and viewing homes built by Everhart. Alexander relied on the representations in the brochure that CMB verified the qualifications of its builder members, and that the builders had the experience, financial responsibility, on-site responsibility, business integrity, construction knowledge, character and professionalism to "earn the certification." Alexander claims that he also relied on the brochure's statements that, if he had a complaint with the builder, the arbitration and conciliation committee would investigate to determine the builder's liability, the brochures' representation that each builder complied with the Code of Ethics, the representation that he would be protected by the CMB program, and the representation that each builder demonstrated the highest standards of character, trust and professionalism.

In January 1994, before construction of the home was complete, disputes arose between Alexander and Everhart, and Everhart demanded arbitration under the contract. Alexander understood that Everhart could demand arbitration, but he believed that the arbitration procedures referenced in the CMB brochure were available at Alexander's option. Alexander contacted CMB regarding the conciliation and arbitration procedures because the brochure provided that arbitration was available through the CMB program. Alexander called CMB to get assistance in selecting an expert for the arbitration. Diane Lair, an employee of CMB, however, told him that his home did not qualify for arbitration under the program because he had not closed on the house. Alexander never formally requested CMB's conciliation and arbitration procedure. Alexander instead selected an arbitrator pursuant to Everhart's demand.

## B. Facts Specific to Halls' Claims

In October or December 1992, while they were selecting a builder, the Halls received the CMB brochure. The Halls had also seen several other articles and advertisements that made the same representations included in the CMB brochure. The Halls chose Everhart over another builder because Everhart was a Certified Master Builder. The Halls would not have chosen Everhart if they had not believed the representations in the CMB promotional materials. Based on the CMB brochure and other promotional materials, the Halls believed that CMB would conciliate any disputes that arose between them and the builder. Prior to signing any contract, the Halls had reviewed a September 20, 1992 article in the Kansas City Star, indicating that HBA members were grandfathered into the CMB program, but the Halls claim that they did not realize that HBA members were not required to meet the qualifications for membership into CMB's program. Moreover, the statement in the article followed a statement that ninety-percent of HBA members exceeded the program's standards. CMB also offered other articles from March and April 1993 that indicated HBA members were not required to go through the formal application process.

On December 23, 1992, the Halls and Everhart entered into a residential construction contract. The contract contained the same terms discussed with respect to the Alexander contract. The Halls read the contract and the attached limited warranty, which covered defects in workmanship and materials by the builder, before

signing the contract. The Halls did not speak with anyone at CMB prior to executing their agreement with Everhart. After signing the contract with Everhart, the Halls received a copy of the separate CMB limited warranty form providing that the arbitration and conciliation procedures did not apply until after closing.

After disputes arose between Everhart and the Halls, the Halls requested and were refused access to the conciliation and arbitration procedures of CMB because they had not yet closed on their house or received a certificate of occupancy. The Halls then submitted their claims against Everhart to the binding arbitration pursuant to the contract.

IT IS, THEREFORE, BY THE COURT ORDERED that the parties' motions (Docs.190, 192, 195) to certify questions of law to the Kansas Supreme Court are granted in part and denied in part. The court certifies the following questions:

(1) Whether the one-year limitations period under K.S.A. 60–514(c) applies to a claim for civil penalties under the Kansas Consumer Protection Act (KCPA), 50–623 *et seq.*, in a case in which the plaintiff asserts both a civil penalties claim and an actual damages claim under the KCPA?

(2) Whether, under the facts of this case, defendant Certified Master Builder is a "supplier" under K.S.A. 50–624(i)?

IT IS FURTHER ORDERED that the clerk of this court forward to the Clerk of the Kansas Supreme Court a copy of this order, under official seal, and comply with any subsequent requests made by the Kansas Supreme Court for the original or copies of all or any portion of the record in this case.

**IT IS SO ORDERED.**